**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CR-20343-KMW**

**UNITED STATES OF AMERICA**

**vs.**

**ROGER ALEJANDRO PIÑATE MARTINEZ,**
**JORGE MIGUEL VASQUEZ,**

        **Defendants.**

_____/

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**
**COUNTS 4-6 FOR FAILURE TO STATE AN OFFENSE**

The United States of America, by and through undersigned counsel, files this response in opposition to the motion to dismiss Counts 4-6 (the International Laundering of Monetary Instruments counts) filed by defendant Roger Alejandro Piñate Martinez and adopted by defendant Jorge Miguel Vasquez.  DE 149, 155.  The defendants argue that the wire transfers alleged in these counts moved *through* a U.S. correspondent bank, and therefore do not constitute transfers "to" or "from" a place in the United States under 18 U.S.C. § 1956(a)(2)(A).  The defendants concede that no court has accepted this interpretation, let alone dismissed indictment counts on this basis.  Rather, every court confronted with this argument — in response to motions to dismiss, Rule 29 arguments, and on appeal — has found that Section 1956(a)(2)(A) covers transfers through domestic correspondent accounts.  The motion should be denied.

**BACKGROUND**

The grand jury charged the defendants in Counts 4-6 with International Laundering of Monetary Instruments in violation of Section 1956(a)(2)(A).  The indictment sets forth the elements of the offense:

[T]he defendants . . . did knowingly transport, transmit, and transfer, attempt to transport, transmit, and transfer, and aid, abet and cause others to do the same, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity.

DE 12 at 22. The indictment further states that the defendants caused three $500,000 wire transfers from shell company bank accounts in Hong Kong, through an intermediary bank account in New York, to a bank account in Singapore beneficially owned by the defendant Juan Andres Donato Bautista, a former Philippine government official:

| Count | Approximate Date | Description of Transaction |
|-------|------------------|---------------------------|
| 4 | August 16, 2016 | Wire transfer in the amount of approximately $500,000 from Shell Company Y's Hong Kong Bank Account 796-838, through an intermediary bank account in New York, to Baumann Bank Account 2411 in Singapore. |
| 5 | August 22, 2016 | Wire transfer in the amount of approximately $500,000 from Shell Company X's Hong Kong Bank Account 271-838, through an intermediary bank account in New York, to Baumann Bank Account 2411 in Singapore. |
| 6 | August 31, 2016 | Wire transfer in the amount of approximately $500,000 from Shell Company Y's Hong Kong Bank Account 796-838, through an intermediary bank account in New York, to Baumann Bank Account 2411 in Singapore. |

*Id.* at 22, 15-16 ¶¶ 21, 23-24.

## ARGUMENT

**I.      SECTION 1956(A)(2)(A) COVERS WIRE TRANSFERS THROUGH U.S. CORRESPONDENT ACCOUNTS.**

As an initial matter, the indictment tracks the elements of Section 1956(a)(2)(A) and sets forth the amounts transferred, the dates of the transfers, and the banking institutions involved in the transfers, as required at this stage under Fed. R. Crim. P. 7(c)(1), which calls for "a plain, concise, and definite written statement of the essential facts constituting the offense charged." The

defendants argue that these wire transfers do not give rise to the offense of international promotion money laundering because the transfers from Hong Kong, through New York, to Singapore were not "to" or "from" the United States, but merely passed "through" the United States.  Therefore, according to the defendants, the Court should ignore the alleged use of domestic correspondent accounts entirely, as if the indictment had alleged transfers occurring wholly outside of the United States.  No court has adopted this reading of the statute or conception of correspondent banks.

"[I]nternational wire transfers," as a threshold matter, "do not merely 'ricochet' off of U.S. correspondent banks," but rather use such banks "as indispensable conduits."  *United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 693 (S.D.N.Y. 2017).  *See United States v. Daccarett*, 6 F.3d 37, 54 (2d Cir. 1993) ("Intermediary banks" are not mere "messengers who never hold the goods, but only pass the word along.") (superseded on other grounds).  Consequently, "courts . . . have long conceived of transfers from one place to another as being severable, and resting in the United States, when moving through correspondent banks."  *United States v. Ho*, 984 F.3d 191, 205-06 (2d Cir. 2020) (internal citation omitted).  *See Prevezon Holdings, Ltd.*, 251 F. Supp. 3d at 693 (finding that "each transfer requires two separate transactions that cross the U.S. border—once upon entering a U.S. account and once upon exiting a U.S. account") (internal citation omitted); *see also United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 94 (D.D.C. 2017) ("The Court therefore again concludes that EFTs [electronic funds transfers] are two transactions: one transaction into the United States and one transaction out of the United States.").

Every court confronted with the defendants' theory has rejected it, including the directly on point Second Circuit opinion that the defendants relegate to a footnote.  *See Ho*, 984 F.3d at

3

197.   In *Ho*, a Hong Kong citizen was convicted by a jury and sentenced to three years' imprisonment for bribing foreign officials in Chad and Uganda on behalf of a Chinese company. *Id.* at 195.   As here, the transfers flowed from a foreign bank account, to a domestic bank account, and back to a foreign bank account, specifically "from HSBC Hong Kong . . . through to HSBC Bank US as the US correspondent for the beneficiary bank . . . in Uganda."  *Id.* at 204.

Before trial, Ho moved to dismiss the international money laundering count, arguing that the $500,000 he allegedly transmitted from Hong Kong to New York and then from New York to Uganda neither went "to" the United States nor "from" the United States, but merely passed *through* the United States.  *United States v. Ho*, No. 17-cr-779 (S.D.N.Y. Apr. 16, 2018), ECF No. 63 at 12-19. *See also id.* at 11 (arguing that "[t]emporarily passing 'through' a correspondent bank in the United States is not the same as coming 'from' or going 'to' the United States").  The district court summarily denied the motion after finding that the indictment tracked the language of the statute. *See* Brief of the United States at 34, *United States v. Ho*, 19-761 (2d Cir. Oct. 9, 2019), 2019 WL 5109730, at *34.

On appeal, Ho again "asserted that the [international] money laundering statute does not cover wire transfers where the United States is neither the point of origination nor the end destination for the money, but is instead just an intermediate stop along the way."  *Ho*, 984 F.3d at 203.  The Second Circuit affirmed the conviction:

> We reject Ho's claim that the charged wire transfer, which took advantage of U.S.-based correspondent accounts to conduct a dollar-denominated transaction, is barred from coverage under § 1956(a)(2)(A).  Though Ho correctly asserts that statutory terms are generally to be given their ordinary meaning, we are unpersuaded that the plain meaning of "to," "from," and "through" compel his conclusion. *See* Ho Br. at 30-31 (arguing that "from" indicates a "starting point"; "to" is associated with reaching; and "through" suggests movement in one side and out another).  The ordinary understanding of these terms does not require them to be mutually exclusive.

. . . .

> [S]ome schemes that colloquially go "through" the United States – in the sense that their origins and destinations are elsewhere – might also be said to involve transfers that go "to" or "from" the United States.  They did so here.

*Id.* at 204-05.

Similarly, in *United States v. All Assets Held at Bank Julius*, 571 F. Supp. 2d 1, 13 (D.D.C. 2008), the relevant wire transfer originated in Poland, passed through a U.S. correspondent account, and terminated at a bank in Switzerland.  The *Bank Julius* defendants "aske[d] the Court to view the transactions at issue as a single transfer – that is, for example, that a transaction that began in Poland, went from Poland to a United States financial institution, and from that United States financial institution to Switzerland, should be viewed as a single transaction or transfer from Poland to Switzerland."  *Id.*  Defendants Piñate and Vasquez put forth the same argument as the defendants in *Bank Julius* "contend[ing] that because the transactions . . . merely passed through the United States, there was no 'transfer' under Section 1956(a)(2)."  *Id.*  The court denied their motion stating: "With each EFT at least two separate transactions occurred: first, funds moved from the originating bank to the intermediary bank; then the intermediary bank was to transfer the funds to the destination bank, a correspondent bank [abroad]."  *Id.*  This court should similarly reject this approach and deny the defendants' motion.

Faced with uniformly hostile precedent, the defendants point to inapposite cases minimizing the significance of case law in favor of a plain reading of a statute.[1]  However, every

---

[1] *See*, *e.g.*, *United States v. Pate*, 84 F.4th 1196, 1207 (11th Cir. 2023) (addressing whether 18 U.S.C. § 1521—which criminalizes filing retaliatory liens against officers and employees of the United States—extends to *former* civil servants, and prioritizing statutory text over case law because, like the defendants here, the government relied on precedent that was "pretty far afield" and "pertain[ed] to a different underlying statute").  *See Johnson v. White*, 989 F.3d 913, 918 n.4 (11th Cir. 2021) (minimizing the utility of case law where an inmate in a Federal Tort Claims Act suit claiming "physical injury" cited case law interpreting an unamended version of the statute that "raised none of the interpretive issues presented" in that case).

court to conduct such a plain reading of Section 1956(a)(2)(A) has concluded that it encompasses transfers through U.S. correspondent banks, which routinely give rise to international money laundering convictions.  For example, the defendants attempt to distinguish *United States v. Polit* by characterizing it as a case premised on transfers to and through Florida accounts and corporations.  DE 149 at 2-3.  However, in *Polit*, the international promotional money laundering object of the Section 1956 conspiracy was premised entirely on transfers precisely like those here: transfers from foreign accounts (of Odebrecht shell companies) to Panamanian accounts that cleared through correspondent banks in the United States.  *See*, *e.g.*, *United States v. Polit*, 22-cr-20114-KMW, DE 182 (S.D. Fla. 2022) (jury verdict finding defendant guilty of all three § 1956 objects including international promotion under § 1956(a)(2)(A)).  The Court should deny the motion based on the text of the statute and interpretative case law.

## II.     THERE IS NO BASIS TO CONSIDER LEGISLATIVE HISTORY OR INVOKE THE RULE OF LENITY.

Courts in this Circuit do not consider legislative history where, as here, canons of construction and interpretative case law resolve the statutory issue.  *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003) ("If the statutory language is not entirely transparent, we employ traditional canons of construction before reverting to legislative history . . . .") (citation omitted); *see Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1224 (11th Cir. 2010) ("[W]e must note that severe problems attend the use of legislative history in statutory interpretation; its analysis is a practice that we seek regularly to avoid.").  Even if the Court were inclined to wade into decades of legislative history for the meaning of the words "to" and "from," the legislative record does not support the defendants' interpretation, much less warrant dismissal.

In fact, courts confronted with similar appeals to legislative history have concluded that

6

the defendants' reading of Section 1956(a)(2)(A) would actually frustrate Congressional intent:

> Viewing each transfer separately, the United States has identified numerous transactions that occurred via United States financial institutions. To require more would be to suppose that Congress did not intend to criminalize the use of United States financial institutions as clearinghouses for criminal money laundering and conversion into United States currency.

*All Assets Held at Bank Julius*, 571 F. Supp. 2d at 12. *See Ho*, 984 F.3d at 203 (same); *see Prevezon Holdings, Ltd.*, 251 F. Supp. 3d at 694 ("Transferring millions of dollars to and from accounts in the United States and between foreign bank accounts as electronic fund transfers that pass[] through U.S. financial institutions is precisely the type of conduct that Congress intended to prevent in enacting the money laundering statutes.") (internal quotations omitted).

Even the materials appended to the defendants' motion highlight that Congress, since the 1970 Bank Secrecy Act and continuing through the 1986 Money Laundering Control Act (which created 18 U.S.C. § 1956), intended to criminalize money laundering transactions that pass through U.S. correspondent banks. *See* Defs.' App'x at 398 (quoting at length from the Congressional testimony of Robert Morgenthau, the former District Attorney in New York County and former U.S. Attorney for the Southern District of New York, who warned that "[a]s a result of . . . expanded activity by American banks, transfers of funds, illicit and otherwise, through domestic banks on the way to secret foreign bank accounts became commonplace; *the domestic clearing and correspondent facilities of United States banks became essential in many instances to the carrying out of illegal schemes involving foreign banks*") (emphasis added); *see id.* at 427 (describing the importance of "analy[zing] the totals of cash shipped to and received from correspondent banks and the Federal Reserve Bank to determine whether suspect amounts of currency entered or left the institution"). The legislative history does not support dismissal of the international money laundering charges.

7

Nor have the defendants identified any required "grievous ambiguity" in the statute to invoke the rule of lenity. *United States v. Shugart*, 176 F.3d 1373, 1376 (11th Cir. 1999). "The rule of lenity . . . is not a doctrine of first resort whenever a criminal defendant identifies a potential ambiguity in a statute, and the rule 'is not invoked by a grammatical possibility.'" *United States v. Pierre-Louis*, No. 00-cr-434, 2002 WL 1268396, *2 (S.D. Fla. Mar. 22, 2002) (citing *Caron v. United States*, 524 U.S. 308, 316 (1998) and *United States v. Maldonado-Ramirez*, 216 F.3d 940, 943 (11th Cir. 2000)). The defendants rely on *United States v. Santos*, 553 U.S. 507 (2008), where the Supreme Court held that the word "proceeds" in an unrelated provision of Section 1956 means "profits," not "receipts," in a case this Circuit has expressly confined to the inapposite context of unlicensed gambling. *See United States v. Ramirez*, 724 Fed. App'x 704, 714 n.2 (11th Cir. 2018). The defendants do not cite—and the government is not aware of—any case applying the rule of lenity to the instant provision of Section 1956(a)(2), which courts have uniformly found extends to the transfers through U.S. correspondent accounts alleged in the indictment.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendants' motion to dismiss.

Respectfully submitted,

LORINDA I. LARYEA
Acting Chief, Fraud Section

*/s/ Connor Mullin*

_____
CONNOR MULLIN (A5503233)
MICHAEL C. DILORENZO
JIL SIMON
Criminal Division
U.S. Department of Justice

HAYDEN P. O'BYRNE
United States Attorney

*/s/ Robert J. Emery*

_____
ROBERT J. EMERY
Assistant U.S. Attorney
Southern District of Florida
Court ID No. A5501892
99 Northeast 4th Street

8

1400 New York Avenue                          Miami, Florida 33132-2111
Washington, DC 20530                          Tel: (305) 961-9421
Tel: (202) 993-4828                           Robert.Emery2@usdoj.gov
Connor.Mullin2@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

      I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court and counsel of record using CM/ECF on May 15, 2025.

/s/ *Connor Mullin*
Connor Mullin
Trial Attorney
