UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

ROGER ALEJANDRO PIÑATE MARTINEZ,

      Defendant.

_____/

**DEFENDANT ROGER PIÑATE'S REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS COUNTS 4-6 FOR FAILURE TO STATE AN OFFENSE**

"[O]nly the words on the page constitute the law." *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020).  That is why the Supreme Court and Eleventh Circuit have held time after time that "any case of statutory construction … begins with the language of the statute"—and ideally "ends there as well."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (quotation omitted); *accord, e.g.*, *United States v. Stephens*, 997 F.3d 1307, 1314 (11th Cir. 2021) ("[O]ur analysis must begin, and usually ends, with the text of the statute." (quotation omitted)).

That basic principle resolves this motion.  The government does not develop any argument that the text of the federal international money laundering statute supports the charges against Mr. Piñate.  Mr. Piñate argued at length that the "plain text of the statute forecloses the government's theory of money laundering."  Mot. 3.  The government's opposition does not discuss the text of the statute *at all*.  By ignoring both Mr. Piñate's arguments and the statutory text entirely, the government has waived any textual defense of its charges.  That requires dismissal of Counts 4-6.

## ARGUMENT

I. **The government has waived any argument that the statutory text supports Counts 4-6.**

"In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).  Courts "in both civil and criminal cases … rely on the parties to frame the issues for decision" and hold the parties "responsible for advancing the facts and arguments entitling them to relief."  *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008).  Courts especially do not make arguments on behalf of federal prosecutors, who are "counsel for the United States, the richest, most powerful, and best represented litigant." *Id.* at 244 (quotation omitted).  When a criminal defendant moves to dismiss and the "facts and arguments advanced by the United States fail to carry their burden" in response, the charges must be dismissed.  *United States v. Ayala*, 711 F. Supp. 3d 1333, 1354-55 (M.D. Fla. 2024).

1

By failing to address the text of § 1956(a)(2), the government has waived any argument, either here or in a hypothetical future appellate proceeding, that the statutory text supports the charges against Mr. Piñate.  Mr. Piñate argued in particular that "[r]eading the statute to reach transfers that pass through the United States would … render the express phrase 'through a place outside the United States' superfluous."  Mot. 7.  The government's opposition does not explain how, if at all, its interpretation gives effect to that phrase; nor does it otherwise respond to Mr. Piñate's argument.  The government's waiver of any argument that the statutory text supports its charges against Mr. Piñate suffices for the Court to dismiss those charges.  At the very least, it is now undisputed that the government's "interpretation" renders the "or through" language a nullity.

## II.    The statutory text unambiguously supports Mr. Piñate's reading.

Assume for the sake of argument that Counts 4-6 rest on the interpretation of the money laundering statute that the government has advanced in other cases (cited at Opp. 3-5): that a foreign transfer of funds through a domestic correspondent bank breaks down into two constituent transfers—one from abroad into the United States, and one from the United States back abroad—that fall within the statute's scope.  This reading, however, "render[s] some statutory language a nullity," Mot. 7, as the government does not deny and thus concedes.

The following diagram illustrates what § 1956(a)(2) covers (see Mot. 2 for statutory text):



The government impermissibly nullifies both "or through" phrases in the statutory text. Its position requires reading the statute to cover an Asia-U.S.-Asia transfer as one transfer "to a place in the United States from … a place outside the United States," and then a second transfer "from a place in the United States to … a place outside the United States." That interpretation gives the phrase "through a place outside the United States" no meaning at all—a transfer "through" that place becomes one transfer "to" that place, and then a second transfer "from" that place.

This approach violates the bedrock "interpretive rule" that courts "must give effect to every clause and word of" a statute. *Setser v. United States*, 566 U.S. 231, 239 (2012) (quotation marks and ellipsis omitted); *accord, e.g.*, *In re Shek*, 947 F.3d 770 (11th Cir. 2020) ("[W]e must attempt to give effect to every word or provision in § 523."). The government's reading is especially untenable because "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). If Congress intended for the statute to be read as the government reads it, then Congress would not have included the "or through" language at all. But it did—twice—so the government is wrong. On top of that, Congress used "through" to modify "a place outside the United States," reflecting its intent to cover transfers through a foreign place. Congress's choice not to use "through" to modify either use of "a place in the United States" reflects that it did not intend to cover transfers that are merely *through* a domestic place. Mot. 5-6.

Mr. Piñate's reading, by contrast, gives effect to every word of the statute, including both of its uses of "or through." The first relevant statutory phrase—"from a place in the United States to or through a place outside the United States"—covers all initially domestic transfers that go abroad; "to … a place outside the United States" covers transfers out of the country that stay abroad, while "through a place outside the United States" covers transfers that return. The second

relevant statutory phrase—"to a place in the United States from or through a place outside the United States"—similarly covers all international transfers that terminate in the United States, with "from … a place outside the United States" reaching the subset of those transfers that originated abroad and "through a place outside the United States" reaching the subset that went abroad only after starting in this country. Every word in the statute bears meaning. Mr. Piñate's reading is also superior to the government's because it construes the statute "as a symmetrical and coherent regulatory scheme." *Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) (quotations omitted). The text's symmetrical two-part structure matches its symmetrical two-part meaning.

Because the government has ignored both the text of the statute and Mr. Piñate's interpretation, the Court should not hypothesize objections to Mr. Piñate's reading on the government's behalf. Mr. Piñate's reading does result in two clauses reaching initially and ultimately domestic transfers that at some point cross the border, but that is no problem: even "substantial" "overlap between … two clauses … is not uncommon in criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord, e.g.*, *Marinello v. United States*, 584 U.S. 1, 9 (2018); *Shaw v. United States*, 580 U.S. 63, 71 (2016). Such overlap is permissible, unlike the fatal interpretive flaw of nullifying words in a statute. *See, e.g.*, *United States v. Atl. Res. Corp.*, 551 U.S. 128, 137 (2007) ("It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render an entire provision a nullity."); *United States v. Gonzalez*, 540 F. App'x 967, 974 (11th Cir. 2014) ("The fact that our interpretation means the subsections cover some overlapping conduct does not render either provision wholly superfluous in the sense that we are cautioned to avoid.").

Because "the text of the statute" conclusively supports Mr. Piñate's reading over the government's, "it is not necessary to go any further." *Babb v. Wilkie*, 589 U.S. 399, 404 (2020).

### III.     The government's reliance on two out-of-circuit cases is not persuasive.

The government's only argument is that other courts have adopted its interpretation.  Opp. 3-5.  The government ignores binding precedent that requires it to start with the text of the statute, so the Court need not consider its reliance on nonbinding cases.  *See, e.g.*, *Van Buren v. United States*, 593 U.S. 374, 381 (2021) ("[S]tart where we always do: with the text of the statute."); *Ga. As'sn of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1120 (11th Cir. 2022) ("We start, as always, with the language of the statute itself.").

The government's argument is not persuasive even on its own misguided terms.  To start, four of the six nonbinding cases that the government cites do not address the interpretation of § 1956(a)(2) at all.[1]  The parties' dispute is about the meaning of that statute, not about what correspondent banks are or how they work, so only two of the government's nonbinding cases are even relevant here.  When the government speaks of "uniformly hostile precedent" for defendants, Opp. 5, and "interpretative case law" supporting the government, *id.* at 6, it is referring to these two nonbinding cases alone.  Regardless, neither case helps the government.

In *United States v. Ho*, 984 F.3d 191 (2d Cir. 2020), the Second Circuit rejected an argument completely different from, and less developed than, Mr. Piñate's here.   Unlike Mr. Piñate, Mr. Ho drew contrasts between "the plain meaning of 'to,' 'from,' and 'through'"—each word

---

[1] *See United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 693 (S.D.N.Y. 2017) ("And because the focus of [18 U.S.C.] § 2314"—which does not use any language relevant here— "is on the <u>transportation</u> of stolen proceeds, the use of correspondent banks … suffices to invoke the statute's application."); *United States v. Daccarett*, 6 F.3d 37, 54 (2d Cir. 1993) (holding that wire transfers qualify as "moneys, negotiable instruments, securities, or other things of value" under 21 U.S.C. § 881(a)(6) and "property, real or personal, involved in a transaction or attempted transaction … or any property traceable to such property" under 18 U.S.C. § 981(a)(1)(A)); *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 95 (D.D.C. 2017) (holding that a wire transfer "is sufficient conduct for extraterritorial application under 18 U.S.C. § 1956(f)," which does not use any language relevant here); *United States v. Polit*, 2023 WL 6849835, at *2-7 (S.D. Fla. Aug. 17, 2023) (rejecting four arguments for dismissal of an indictment, none of which involved statutory interpretation), *R. & R. adopted*, 2023 WL 6846742 (S.D. Fla. Oct. 17, 2023).

individually. *Id.* at 204. Specifically, he "argued that 'from' indicates a 'starting point'; 'to' is associated with reaching; and 'through' suggests movement in one side and out another." *Id.* (quoting Def.'s Br.). But courts do not rely "solely on dictionary definitions of [a statute's] component words in isolation." *United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023). And that was all that Mr. Ho offered. *See* Def.'s Br., *United States v. Ho*, No. 19-761, at 30-32 (2d Cir. July 10, 2019), Dkt. No. 30 (collecting and contrasting "[d]ictionary definitions" to "establish the distinct meanings of 'from,' 'to,' and 'through'"). The Second Circuit rejected Mr. Ho's three-word argument, but it did not consider any developed textual argument like Mr. Piñate's—and there, unlike here, the government presented a textual argument for its alternative interpretation.

The government's reliance on its second case, *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1 (D.D.C. 2008), helps the government even less. That district court's "excerpt" of § 1956(a)(2) suggests that it interpreted the wrong language entirely:

| *Bank Julius Baer*, 571 F. Supp. 2d at 13 | 18 U.S.C. § 1956(a)(2) |
|---|---|
| "transport [], transmittal, or transfer [][of] a monetary instrument or funds from a place in the United States to or through a place in the United States from or through a place outside of the United States…" | "transports, transmits, or transfers … a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States" |

Consistent with its misquoting of the statutory text, that district court did not even analyze the "or through" language that is the crux of Mr. Piñate's entire argument. *See Bank Julius Baer*, 571 F. Supp. 2d at 13 ("Claimants contend that because the transactions at issue here merely passed through the United States, there was no 'transfer' under Section 1956(a)(2)."). The government urges the Court to follow *Bank Julius Baer* by arguing that Mr. Piñate "put forth the same argument as the defendants" there, Opp. 5, but that is simply not accurate: the claimants there apparently focused on the nature of the transactions, while Mr. Piñate focuses on the language of the statute.

6

Additional errors pervade the *Bank Julius Baer* court's decision. But given space constraints, the district court's discussion of *United States v. Kramer*, 73 F.3d 1067 (11th Cir. 1996), is illustrative. When the claimants cited *Kramer*, the district court rejected that decision as "inapposite … because in *Kramer*, the transfer at issue went directly from Switzerland to Luxembourg," so the Eleventh Circuit purportedly "was addressing a situation where the relevant conduct occurred wholly outside of the United States." *Bank Julius Baer*, 571 F. Supp. 2d at 13. The district court completely misunderstood the facts of *Kramer*, which involved "$9.5 million" that "was sent from California to Switzerland, where it remained until it was transferred to Luxembourg." *Kramer*, 73 F.3d at 1070. The whole point of *Kramer* was that the defendant's conviction could not stand *even though* the transferred funds had "originated in the United States," because the jury had found the defendant caused the transfer of funds "from Switzerland to Luxembourg," and § 1956(a)(2) "does not criminalize transfers which are not to or from the United States." *Id.* at 1072. The *Bank Julius Baer* court misunderstood not only *Kramer*'s facts but also its reasoning: the district court thought that "*Kramer* undermin[ed] the Claimants' argument, as the court in *Kramer* expressly stated its opinion that the statutory language and legislative history of Section 1956(a)(2) 'indicate that each transaction or transfer of money constitute a separate offense.'" *Bank Julius Baer*, 571 F. Supp. 2d at 13. But the Eleventh Circuit specifically explained that while the defendant "was convicted under 18 U.S.C. § 1956(a)(2)," the language and legislative history it relied on concerned "different sections of the money laundering statute." *Kramer*, 73 F.3d at 1073 n.11. What's more, the distinct transactions at issue in *Kramer* that the Eleventh Circuit deemed "separate" occurred *eight months apart*, unlike the single, fleeting transactions charged here—each of which occurred on a single day. *Id.* at 1076 ("February 17, 1987" and "October 14, 1987"). The legislative history that the Eleventh Circuit relied on in

7

deeming those transfers separate transactions does not remotely translate to a single transfer through a correspondent bank.[2]

In light of the defendant's superficial argument in *Ho* and the district court's faulty reasoning in *Bank Julius Baer*, neither of those cases sheds any helpful light on the parties' dispute here. Neither court's decision is binding on this Court; nor did either court consider a developed textual argument like what Mr. Piñate offers here. This Court should heed the Supreme Court's and Eleventh Circuit's instruction to start and end with the text; the government's appeal to cases that are neither precedential nor persuasive here should be disregarded.

**IV.     Even the legislative history cited by the government supports Mr. Piñate's reading.**

Mr. Piñate agrees that the Court need not consult legislative history—because the statute unambiguously supports his reading of § 1956(a)(2) and forecloses the government's.[3]

In any event, the only legislative history that the government cites supports Mr. Piñate's interpretation, not the government's. The government starts by quoting courts offering their own policy views about competing interpretations of § 1956(a)(2), which is not legislative history at all. *See* Opp. 6-7 (citing *Bank Julius Baer*, 571 F. Supp. 2d at 12 (not discussing legislative history

---

[2] The Eleventh Circuit specifically cited S. Rep. No. 433, 99th Cong. 2d Sess. 12-13 (1986). *Reproduced at* Def.'s App'x 295-96 (explaining that "each transaction involving 'dirty money' is intended to be a separate offense," such that "a drug dealer who takes $1 million in cash from a drug sale and divides the money into smaller lots and deposits it in 10 different banks (or in 10 different branches of the same bank) on the same day has committed 10 distinct violations of the new statute"). That legislative history reflects that Congress contemplated a "transaction" as a unit defined by the *defendant's conduct*, not the movement of money—which would support construing separate transfers initiated eight months apart as two separate transactions, but a single transfer through a correspondent bank as one transaction.

[3] Oddly, the government supports its objections to legislative history by citing cases (Opp. 6) that approve of consideration of legislative history after exhaustion of other interpretive excerpts. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (approving consideration of "extrinsic materials, including legislative history," when "statutory language is ambiguous"); *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1224 (11th Cir. 2010) ("looking to legislative history … may become necessary where the statutory text is doubtful").

at all); *Ho*, 984 F.3d at 203 (same); *Prevezon Holdings*, 251 F. Supp. 3d at 694 (same)). The Supreme Court has specifically held that judicial "suppositions about intentions" do not permit courts to "overlook plain statutory language," *Bostock*, 590 U.S. at 683, so the government misses the point in dwelling on what judges themselves have "suppose[d] that Congress [did or] did not intend to criminalize," Opp. 7 (quoting *Bank Julius Baer*, 571 F. Supp. 2d at 12). The government does rely on actual legislative history to support its claim that Congress was aware of the use of "correspondent banks" and "correspondent facilities of United States banks" in international transactions. Opp. 7. But it helps Mr. Piñate, not the government, that Congress was aware of foreign transfers through domestic banks: if Congress intended to reach those transfers, it could have and would have done so expressly, just as it did for transfers "through a place outside the United States."

## V. The rule of lenity requires resolving any textual ambiguity in Mr. Piñate's favor.

The government does not and cannot deny that Supreme Court and Eleventh Circuit precedent "require[s] all ambiguity in [a] criminal statute to be construed in favor of [the] accused." *Kramer*, 73 F.3d at 1073 n.11. The government's only response misunderstands Mr. Piñate's citation to *United States v. Santos*, 553 U.S. 507 (2008), where "no single opinion won the support of a majority of the Court" in interpreting certain words in the money laundering statute, but a five-Justice majority endorsed application of "the rule of lenity." Mot. 12. The government argues that the Eleventh Circuit "confined" *Santos*, Opp. 8, but the government's own cited case explains that the Eleventh Circuit confined *a different part of that case*, not the *Santos* Court's discussion of the rule of lenity. *See United States v. Ramirez*, 724 F. App'x 704, 714 n.2 (11th Cir. 2018) (explaining that "prior panels of th[at] Court ha[d] held that the narrower definition of 'proceeds' set out in *Santos* should only be applied to conduct relating to unlicensed gambling operations"). This case does not concern the definition of "proceeds," so the government's citation to *Ramirez*

9

is beside the point. More importantly, by waiving all textual arguments, the government has failed to show that its interpretation of the statute is unambiguously correct. That is enough to require application of the rule of lenity: Mr. Piñate has advanced a plausible (indeed, correct) interpretation of the statute, and the government cannot argue that it has offered a superior interpretation when it has not advanced any interpretation at all.

**VI.    The government has not carried its burden to sustain Counts 4-6, so those charges must be dismissed.**

"[A]n indictment fails as a matter of law if the defendants' charged conduct, even if true, does not violate the statute or provision cited in the indictment." *United States v. Berdeal*, 595 F. Supp. 2d 1326, 1328 (S.D. Fla. 2009). An indictment that "does not state an offense under the" text of the relevant "statute, … as a matter of law, is deficient" and should be dismissed. *United States v. Bobo*, 344 F.3d 1076, 1086 (11th Cir. 2003); *see also United States v. Madera*, 528 F.3d 852, 859 (11th Cir. 2008) (reversing denial of motion to dismiss based on determination that statute did not apply retroactively to alleged conduct). The government has now both confirmed that Counts 4-6 rest exclusively on alleged transfers "through" the United States and failed to articulate an interpretation of the statute that would reach those transfers. It is thus undisputed for purposes of this motion that Counts 4-6 rest on allegations of conduct that, if proven, would not support a conviction, so they must be dismissed. *See, e.g.*, *United States v. Tait*, 202 F.3d 1320, 1321 (11th Cir. 2000) (affirming grant of pretrial motion to dismiss "based on [district] court's interpretation and application of relevant statutes"); *United States v. Morales*, 685 F.2d 1272 (11th Cir. 1982) (same); *Ayala*, 711 F. Supp. 3d at 1355 (granting motion to dismiss based on government's waiver).

**CONCLUSION**

Mr. Piñate respectfully requests that the Court dismiss Counts 4-6 of the Indictment for failure to state an offense.

10

Respectfully submitted,

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: (305) 476-7400

By: ___ /s/ DRAFT _____
    Curtis B. Miner, Esq.
    (Florida Bar No. 885681)
    E-mail: curt@colson.com
    Thomas A. Kroeger, Esq.
    (Florida Bar No. 19303)
    E-mail: tom@colson.com


*And*


MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel: 202-739-5932
Sandra L. Moser, Esq. (*pro hac vice*)
E-mail: Sandra.moser@morganlewis.com
Justin D. Weitz, Esq. (*pro hac vice*)
E-mail: Justin.weitz@morganlewis.com
Andrew R. Hellman, Esq. (*pro hac vice
forthcoming*)
E-mail: Andrew.hellman@morganlewis.com

*Counsel for Defendant Roger Alejandro Piñate
Martinez*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of Court which sent an e-mail notification of such filing to all CM/ECF participants on May 22, 2025.

/s/ Curtis B. Miner
Curtis B. Miner, Esq.

12