**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.  24-cr-20343-KMW(s)**

**UNITED STATES OF AMERICA**

**vs.**

**SGO CORPORATION LIMITED,**
    **a/k/a, "Smartmatic,"**

        **Defendant.**

_____/

### GOVERNMENT'S RESPONSE IN OPPOSITION TO SGO'S
### MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION

Defendant SGO's motion to dismiss relies on a fundamentally flawed premise and on speculative assumptions devoid of any factual or evidentiary basis. Because SGO's prosecution is neither vindictive nor selective, its motion should be denied. SGO's indictment came at the conclusion of an appropriate and regular process. That process was managed by career prosecutors, beginning in the previous Administration and continuing in the current Administration. It followed the format and cadence typical of many corporate FCPA cases over the years, featuring discussions between prosecutors and counsel for the Smartmatic entities ("Smartmatic" or "SGO") regarding the scope of criminal corporate liability, and how to resolve such liability through a pre-indictment criminal resolution.

*First*, contrary to defendant SGO's assertion, it is demonstrably false that the government had concluded its investigation into Smartmatic when it charged four individual defendants in August 2024. Defendant SGO knows this is false because the government and SGO engaged in regular communications and had multiple meetings before and after the Indictment against the individual defendants in an effort to seek a negotiated pre-indictment resolution. Only when those

1

negotiations proved unfruitful did the government exercise its prosecutorial discretion and seek a superseding indictment that added SGO as a corporate defendant. In order to respond to defendant SGO's false assertions, set forth below is a timeline of some of the relevant communications and interactions between the government and Smartmatic's outside counsel, which unequivocally repudiates defendant SGO's claim that "the government appeared to have concluded the investigation of 2016 events with its August 2024 indictment." DE 351 at 2.

*Second*, defendant SGO claims in its motion that its indictment is the product of a long-running campaign against Smartmatic by the current Administration and certain political allies. Specifically, defendant SGO suggests that its role in the 2020 election and the defamation suit it filed against a private media company in 2021 were precipitating events leading to SGO's prosecution, thereby purportedly demonstrating vindictiveness and discriminatory selectiveness by the government. These accusations are utterly false. The government's investigation into the facts of this case began in 2018 and continued through 2025. Neither the 2020 U.S. election nor Smartmatic's civil dispute with private litigants had any bearing on this prosecution. Instead, this is a case about the bribery and money laundering scheme that defendant SGO and its co-conspirators allegedly engaged in vis-à-vis the 2016 Philippine election.

Because the prosecution of defendant SGO is not vindictive or selective, the motion to dismiss should be denied.

## I.    STATEMENT OF FACTS

### A.    The Government's Investigation.

In its motion to dismiss, defendant SGO does not seriously attack the merits or legitimacy of the government's investigation into the conduct that gave rise to the charges in the Superseding Indictment. With good reason. The government's investigation began in 2018, well before the 2020

election, and was pursued and continued across different U.S. Administrations, both against individuals and the company itself. Since 2021, as part of a routine FCPA investigation, line prosecutors regularly communicated with Smartmatic's outside counsel concerning numerous factual and legal issues.

>   **B.      Pre- and Post-Indictment Discussions, Plea Negotiations,[1] and Superseding Indictment.**

In the months preceding and following the Indictment of the individual defendants, the government and counsel for Smartmatic engaged in sustained discussions about corporate liability and potential resolution. The process by which career prosecutors engaged in those discussions — led by the trial team with support from their supervisory chains — did not deviate from the long-established practice for corporate FCPA cases.

Following years of investigation and consistent engagement with company counsel, the government invited Smartmatic to present its views on whether and how the case should be criminally resolved consistent with the Justice Manual's Principles of Prosecuting Business Organizations. That meeting took place in July 2024, approximately one month before the initial Indictment of the four individuals. Any experienced counsel would understand that this meeting and the content and scope of the government's requests during this time suggested a desire by the government to move the case against Smartmatic towards a criminal disposition.

On August 8, 2024, a federal grand jury returned an Indictment against senior Smartmatic executives and a foreign official in connection with the bribery and money laundering scheme. Within one week of the Indictment, on August 15, 2024, the government wrote to SGO's lawyers to make clear that the individual charges did not end the government's investigation of the

---

[1] This Response includes information about the parties' plea negotiations in order to dispel the misimpression caused by defendant SGO's motion that there were no such negotiations.

company and asked to discuss next steps regarding the company. Ex. A. The Indictment of the three Smartmatic executives in August 2024, who are alleged to have acted on behalf of Smartmatic entities, only increased the likelihood of an imposition of corporate liability in light of the principle of *respondeat superior*. With that awareness, Smartmatic engaged with the government in the latter half of 2024. For example, in September and October 2024, the government requested information from Smartmatic relating to its code of business conduct, charitable donation and gift policies, and other information, and Smartmatic produced documents relating to the email accounts of defendants Piñate, Vasquez, and others, purportedly in the spirit of cooperation. The company also informed the government that two individuals had been placed on paid administrative leave pending the outcome of the criminal charges.

The parties continued to discuss outstanding matters, including a video conference in November 2024, and, in December 2024, the government sent a tolling agreement extension for Smartmatic's consideration, which the company declined to sign. The government and Smartmatic continued discussions into the new year, with a January 6, 2025, video conference, followed by additional requests from the government, and Smartmatic's indication through counsel that it was considering "the opportunity to present additional information" to the government. Ex. B.

On February 10, 2025 — the same day as the President's Executive Order relating to the enforcement of the Foreign Corrupt Practices Act (the "FCPA Executive Order") — Smartmatic's outside counsel presented the government with information that Smartmatic believed should factor into the government's charging decision. The next day, at outside counsel's request, the government agreed to provide Smartmatic with a limited reverse proffer of certain evidence. In April 2025, after an initial postponement by Smartmatic, and after the government confirmed that the matter had been reviewed under the FCPA Executive Order and — at the recommendation of

4

the line prosecutors — approved to continue, the government provided a reverse proffer to Smartmatic's outside counsel. The government made clear to outside counsel and Smartmatic's General Counsel that the purpose of the proffer was to present evidence of the company's criminal liability.

On July 2, 2025, the undersigned line prosecutors, having requested and received the necessary approvals from their offices, offered Smartmatic the terms of a criminal pre-indictment resolution in which a Smartmatic subsidiary entity would plead guilty in light of, among other things, senior executives' commission of a significant foreign bribery scheme. Thereafter, counsel for Smartmatic appealed the offer, and between August 2025 and October 2025, made multiple presentations to Department leadership. In consultation with career prosecutors, Department leadership declined to overrule the line prosecutors' plea offer. This decision was based on the nature and circumstances of the bribery and money laundering offenses committed by high-ranking Smartmatic executives, the company's extremely limited cooperation and remediation, and the other factors set forth in the Justice Manual and Department of Justice policy.

Following multiple extensions of the plea offer, Smartmatic's outside counsel offered several counter proposals. At the recommendation of the line prosecutors, Department leadership rejected those proposals as 1) inadequate given the nature and seriousness of conduct and 2) inconsistent with past practice and Department policy. On October 16, 2025, a federal grand jury returned a Superseding Indictment against the four previously indicted individuals and SGO.

## II.    LEGAL STANDARD

### A.    Vindictive Prosecution

"[A]s long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, the decision whether or not to prosecute, and if so, what charge to

bring before the grand jury, rests in the prosecutor's discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *United States v. Cole*, 755 F.2d 748, 758 (11th Cir. 1985).

"The issue of prosecutorial vindictiveness is generally raised in the post-trial context." *United States v. Castronuovo*, No. 10-CR-80149, 2013 WL 2329964, at *3 (S.D. Fla. May 28, 2013). "Although there is a presumption of vindictiveness that arises when new charges are brought post-trial, there is no such presumption in the pre-trial context." *United States v. South*, 295 F. App'x 959, 967 (11th Cir. 2008) (citing *United States v. Barner*, 441 F.3d 1310, 1316 (11th Cir. 2006)). Rather than a presumption of prosecutorial vindictiveness pre-trial, the Eleventh Circuit directs courts to "evaluate the realistic likelihood of vindictiveness." *Barner*, 441 F.3d 1317 (internal quotation marks omitted).

### B.     Selective Prosecution

To establish selective prosecution, "defendants bear a demanding burden." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (internal quotation marks omitted). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present *clear* evidence to the contrary." *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). The Eleventh Circuit requires the defendant to meet two requirements. *First*, the defendant must satisfy the "discriminatory effect" prong by "mak[ing] a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted." *Jones v. White*, 992 F.2d 1548, 1571, 1573 (11th Cir. 1993). *Second*, having satisfied the initial burden, a defendant must demonstrate that "the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group"; this is the "discriminatory purpose" prong. *Jordan*, 635 F.3d at 1188. Similarly situated individuals are those who "commit[] the same basic crime in

substantially the same manner as the defendant . . . and against whom the evidence was as strong or stronger than that against the defendant." *Smith*, 231 F.3d at 810.

"[I]n order to obtain an evidentiary hearing on a selective prosecution claim, 'the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution.'" *Jordan*, 635 F.3d at 1188 (quoting *United States v. Silien*, 825 F.2d 320, 322 (11th Cir. 1987)). "Discovery on a selective prosecution claim is subject to a correspondingly rigorous standard. It requires a defendant to produce some evidence tending to show the existence of the essential elements of a selective prosecution claim — discriminatory effect and discriminatory purpose." *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021) (internal quotation marks and citations omitted). Mere "[s]peculation is insufficient." *United States v. Wasserman*, No. 20-CR-207, 2021 WL 6550974, at *4 (M.D. Fla. Feb. 2, 2021); *see also United States v. Armstrong*, 517 U.S. 456, 470-71 (1996) (rejecting claim for discovery on a selective prosecution claim).

## III.   ARGUMENT

### A.   Vindictive Prosecution

In its motion to dismiss, defendant SGO attempts to rely on a "presumption of vindictiveness." DE 351 at 13-14. However, the law in the Eleventh Circuit requires a defendant in the pretrial context to show "actual vindictiveness" or a "realistic likelihood of vindictiveness." *See Barner*, 441 F.3d at 1316-17; *South*, 295 F. App'x at 967. Here, defendant SGO has demonstrated neither.[2]

---

[2] The cases defendant SGO relies on for its "presumption of vindictiveness" are out of circuit cases and are inapposite. *See United States v. Wilson*, 262 F.3d 305 (4th Cir. 2001) (reversing as clear error the district court's finding that the defendant established actual vindictiveness and holding that a presumption of vindictiveness also had not been established because his subsequent prosecution involved "an entirely new charge with a new set of facts"); *United States v. Carey*, No. 25-CR-251, 2026 WL 141919 (D.D.C. Jan. 20, 2026) (in case of first impression, denying motion to dismiss for vindictive prosecution, but ordering a "status hearing to assess next steps" in pre-trial context where defendant who burned an American flag outside of the White House was charged with two misdemeanors relating to unsafe fire in a non-designated area and there was an executive order calling for the prosecution of individuals who

7

Most of the case law regarding vindictive prosecution claims involves a defendant exercising a protected right within the context of a charged or investigated case — such as successfully challenging charged counts or rejecting a plea offer — and the government subsequently "increas[ing] charges." *Castronuovo*, 2013 WL 2329964, at *3. Here, defendant SGO claims that it exercised a protected right by filing a separate civil defamation case against third parties three years prior to the government indicting the individual defendants and four years prior to the government charging it in the Superseding Indictment.   Defendant SGO has cited no analogous case in support.

In fact, defendant SGO cites no case in which a court has dismissed an indictment on vindictive prosecution grounds. Defendant SGO's only stated basis for its claim of vindictive prosecution is the general "circumstances and timing" of the Superseding Indictment, purportedly due to "its limited role in the 2020 election" and its "defamation lawsuits."[3] Such a vague and unfounded assertion without evidence is wholly insufficient to establish actual vindictiveness or even a realistic likelihood of vindictiveness. *See Barner* 441 F.3d 1317 (internal quotation marks omitted). Tellingly, defendant SGO has failed to explain how the Superseding Indictment is vindictive, but the original Indictment of the individual defendants, on whose conduct defendant SGO's criminal liability is premised, and which was initially filed by several of the same prosecutors during the prior Administration, was not. Indeed, both occurred after the 2020 election and after SGO filed its defamation suits in 2021.[4]

---

"otherwise violate our laws while desecrating this symbol of our country, to the fullest extent permissible under any available authority").

[3] To the extent the "circumstances" to which defendant SGO refers also include other cases involving other defendants, other prosecutors, and other districts (*see* DE 351 at 9), they are simply irrelevant to the Court's analysis.

[4] Defendant SGO's reliance on *United States v. Abrego* is also misplaced. There the court ordered discovery and held that the timing of the defendant's indictment suggested retaliation because "[o]nly 58 days passed" between the defendant's civil suit and subsequent indictment; and HSI's investigation into him was reopened "a mere seven days after he prevailed . . . on appeal at the Supreme Court." 802 F. Supp. 3d 1055, 1064 (M.D. Tenn. 2025).  In so holding, the court noted that that timing was in "stark contrast" to the 832 days the prior investigation into the defendant had

Throughout its motion, defendant SGO refers to the Superseding Indictment as a "reversal" from the government's prior posture and asserts that the government "reversed course" in 2025. *See, e.g.*, DE 351 at 15, 2. Defendant SGO's bold accusation that the government acted with improper motivations in seeking the Superseding Indictment is, in a word, false. As set out in the factual background, *supra*, the government eventually sought an indictment of SGO after years of investigation, years of consistent communication with SGO's then-counsel, multiple agreements tolling the statute of limitations,[5] and efforts by the Government to enter into a pre-indictment disposition, which SGO flatly rejected.

The Superseding Indictment was returned five years after the 2020 election, four years after Smartmatic filed its defamation lawsuits in 2021, a little over one year after the individual defendants were first charged, and approximately nine months after the current President assumed office. But *post hoc ergo propter hoc* is a logical fallacy. Defendant SGO has produced no evidence supporting its claim of vindictive prosecution.[6]  Indeed, the government's decision to add SGO as a defendant in this case through the Superseding Indictment was the logical and unsurprising result of the conclusion of its investigation and SGO's rejection of the government's plea offer. Although SGO made counteroffers, they did not sufficiently account for the seriousness of the offense and were markedly inconsistent with prior FCPA resolution and corporate enforcement practices. The line prosecutors therefore exercised their discretion and, with approval from their respective supervisors, sought the indictment of SGO.

---

remained open without referral for prosecution. *Id.* Here the timing of the Superseding Indictment — years after the alleged exercise of protected rights — makes no such suggestion.

[5] The tolling agreements signed by SGO, expressly referred to the government's ongoing investigation into Smartmatic and referenced specific criminal statutes, including the FCPA and money laundering.  Additionally, the agreements explicitly did not limit the government's right or discretion to bring criminal charges against Smartmatic.

[6] In a footnote, defendant SGO attempts to bootstrap advocacy statements made by its own lawyers in a separate case and present it as evidence of animus in this case. *See* DE 351 at 10 n.11. If defendant SGO had any actual evidence, it presumably would have presented it somewhere in its twenty-page motion.

Finally, defendant SGO falsely characterizes the August 2024 Indictment of the individual co-conspirators as the "conclu[sion]" of the government's investigation of the underlying bribery and money laundering case. DE 351 at 2. This characterization is wholly refuted by the factual background set out above. As the Eleventh Circuit has noted, "[t]here can be all kinds of practical reasons, including differences in evidence or in the progress of the investigation, which cause the government to prosecute some criminals before others for the same crime." *Smith*, 231 F.3d at 809. Indeed, several significant corporate FCPA resolutions in recent years occurred after individual charges had been brought — including, for example, the deferred prosecution agreement with Vitol Inc. in 2020, the plea agreement with Glencore International A.G. in 2022, and the plea agreement with Gunvor S.A. in 2024. Here, the government continued to engage in discussions with SGO's counsel about potential pre-indictment resolution until September 2025. Only after SGO's final tolling agreement expired and it had rejected the government's plea offer, did prosecutors seek return of the Superseding Indictment. This is not vindictive. It is the normal operation of the justice system. *See Bordenkircher*, 434 U.S. at 363 ("[I]n the give-and-take of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.").

### B.     Selective Prosecution

Nor has defendant SGO carried its "demanding burden" of establishing selective prosecution. *Jordan*, 635 F.3d at 1188. As a threshold matter, defendant SGO has not made the requisite *prima facie* showing of discriminatory effect. Defendant SGO argues that because it was

the only corporate defendant charged with an FCPA violation via indictment since approximately 2010, it has been treated differently than other similarly situated defendants.

It is, of course, correct that indictments of companies that are the subjects of FCPA investigations have historically been rare. But the reason for SGO's indictment was not selective prosecution. Every other company in the last decade and a half that found itself in similar circumstances and faced criminal exposure under the FCPA elected to enter into a pre-indictment disposition, rather than risk indictment. In the past ten years, more than 85 corporations have reached pre-indictment resolutions with the government in FCPA-related investigations, including plea agreements, deferred prosecution agreements, non-prosecution agreements, and declinations under the Department's Corporate Enforcement Policy.

As is its constitutional right, defendant SGO has chosen to put the government to its burden of proof. But defendant SGO's choice is not evidence of the government treating SGO "selectively." Defendant SGO has not put forth any evidence that it was treated differently than other defendants that committed the "same basic crime in substantially the same manner" and "against whom the evidence was as strong or stronger."[7] *Smith*, 231 F.3d at 810. And as the factual background above lays out, the process afforded to Smartmatic in this case to explore pre-

---

[7] Defendant SGO's reliance on *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), is misplaced. *Falk* is a Seventh Circuit case from 1973 that has never been cited by the Eleventh Circuit and that the Fifth Circuit explicitly repudiated. *See United States v. Ream*, 491 F.2d 1243, 1246 (5th Cir. 1974) ("Whatever doubts we might have — and they are not small ones — about [the *Falk*] decision in light of the Executive's exclusive prerogative in commencing, maintaining, or terminating prosecutions . . . Falk indicates an evidentiary hearing need be held only when a defendant presents facts sufficient to raise a reasonable doubt about the prosecutor's motive."). Because defendant SGO has not presented facts that raise a reasonable doubt as to the prosecutor's motive in charging defendant SGO after it rejected the plea offer, *Falk* is inapposite.

indictment resolution — beginning in 2024 and ending in the fall of 2025 — demonstrates that the company was treated appropriately and in a manner consistent with long-established practices.

Additionally, to the extent defendant SGO's argument that there has been a "full-scale retreat from FCPA investigations and prosecutions" implies that the Department is no longer seriously enforcing the FCPA or has brought no other charges against a corporate defendant in an FCPA case, it is incorrect. DE 351 at 16. On October 22, 2025 — a few days after the grand jury returned the Superseding Indictment in the instant case — an information charging conspiracy to violate the FCPA, in conjunction with a deferred prosecution agreement, was filed in the Southern District of Florida against Comunicaciones Celulares S.A., the Guatemalan subsidiary of Millicom International Cellular, S.A. *See* No. 25-CR-20476-Becerra, DE 3. In addition, since the issuance of the Deputy Attorney General's guidelines on FCPA enforcement in June 2025, two other companies have reached resolutions under the Department's Corporate Enforcement Policy. Numerous individuals have been charged with FCPA offenses, and three FCPA trials have taken place between September 2025 and February 2026.

Because defendant SGO has not presented any evidence, let alone "*clear* evidence" that it was selectively prosecuted, *Smith*, 231 F.3d at 807 (emphasis in original), the Court should not reach the second prong in the Eleventh Circuit's two-step test, assessing whether a selective prosecution had a discriminatory purpose. *See Jones*, 992 F.2d at 1571. But even if the Court were inclined to assess the second prong, defendant SGO's arguments that certain statements by private citizens and other third parties about the 2020 election, or SGO's 2021 defamation suit against a media company "suggest a discriminatory purpose" (DE 351 at 23) in this case are entirely "speculative" without a scintilla of evidence, and are therefore insufficient under Eleventh Circuit law to establish that its prosecution was constitutionally invidious. *Wasserman*, 2021 WL 6550974

at *4.

Defendant SGO cites no Eleventh Circuit case in support of its argument that it was indicted with a discriminatory purpose. Instead, its arguments rely almost entirely on its assertion that alleged animus by the President or his allies related to Smartmatic's role in the 2020 election or its defamation suit against a media company triggered the decision to indict in 2025 as punitive retaliation. However, as detailed above, the facts show otherwise. Career prosecutors in the Fraud Section and the U.S. Attorney's Office in the Southern District of Florida chose this course of action in a legitimate exercise of discretion to seek to hold a company accountable for its alleged criminal conduct. Indeed, the record here shows consistent investigation of, and interactions with, SGO beginning in approximately 2018 and continuing until just days before the company was indicted. Defendant SGO has not been treated differently than other similarly situated defendants, and there is no evidence of discriminatory effect or discriminatory purpose.

None of the broadsides leveled by defendant SGO against the Department about its purported animus and "crusade" to target Smartmatic and other perceived political enemies alter the simple fact that defendant SGO has proffered no evidence that the decision to indict was tainted by improper or unconstitutional motives. The speculation and conjecture defendant SGO provides are also inadequate to support an evidentiary hearing or discovery on its selective prosecution claim. *See Jordan*, 635 F.3d at 1189; *Armstrong*, 517 U.S. at 470-71 (rejecting claim for discovery on selective prosecution claim even where affidavits were provided because affidavits merely "recounted hearsay and reported personal conclusions based on anecdotal evidence").

13

## IV.    CONCLUSION

The Superseding Indictment charging defendant SGO with bribery and money laundering is neither vindictive nor selective. As such, SGO's motion to dismiss should be denied, including its request for discovery and a hearing.

Respectfully submitted,

LORINDA I. LARYEA
Chief

*/s/ Jil Simon*
JIL SIMON (A5502756)
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 514-3257
Jil.Simon@usdoj.gov


*/s/ Connor Mullin*
CONNOR MULLIN (A5503233)
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 993-4828
Connor.Mullin2@usdoj.gov

JASON A. REDING QUIÑONES
United States Attorney

*/s/ Robert J. Emery*
ROBERT J. EMERY
Assistant U.S. Attorney
Southern District of Florida
Court ID No. A5501892
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9421
Robert.Emery2@usdoj.gov

14

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on March 24, 2026, and therefore on all counsel of record.

/s/ *Jil Simon*
Jil Simon
Trial Attorney