## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

                     Plaintiff,

          v.

SGO CORPORATION LIMITED,

                     Defendant.

Case No. 24-cr-20343 (KMW)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SGO CORPORATION LIMITED'S MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION

SGO's Motion[1] argues that it was unconstitutionally targeted by the DOJ in retaliation for its lawsuits against the President's allies (like Fox) and because the President and his allies believe Smartmatic "rigged" the 2020 election.  The DOJ's brazenness would have been unthinkable just months ago. Today, it is business as usual: all part of the effort to pursue the President's political enemies.

Fourteen months after the DOJ excluded SGO from its initial indictment, and nine months after President Trump returned to office and installed loyalists to run the Department, DOJ reversed course and indicted SGO, the first company indicted under the FCPA in 15 years (and only the third in the FCPA's 50-year history). The DOJ took this rare step just as it was otherwise retreating from FCPA enforcement, dismissing myriad corporate investigations.[3] The Opposition does not dispute that prior to the indictment, the President and his allies targeted SGO in their efforts to overturn the 2020 election, or that those same allies remain in litigation against SGO.

Rather than dispute those facts (or even attempt to address the hundreds of pages of evidence in support of SGO's argument) the government asks the Court to focus on the duration of the DOJ's investigation, and on the involvement of "line prosecutors." Both are irrelevant to

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth in SGO's motion to dismiss the Superseding Indictment for vindictive and selective prosecution (ECF No. 351, the "Motion" or "Mot."). The government's brief in opposition to SGO's Motion (ECF No. 358) is referred to herein as the "Opposition" or "Opp."

[2]

[3] That trend continues: in March, DOJ closed another long-running corporate FCPA investigation with no action. Malavika Devaya, *Years-long DOJ Inquiry Ends With No Charges for Dr. Reddy's*, GLOBAL INVESTIGATIONS REVIEW (Mar. 27, 2026), https://globalinvestigationsreview.com/just-anti-corruption/article/years-long-doj-inquiry-ends-no-charges-dr-reddys.

the issue at the core of this motion: the involvement of President Trump, his allies inside and outside of the White House, and his handpicked DOJ officials in the decision to prosecute SGO notwithstanding the retreat from FCPA enforcement. Avoiding that question, the Opposition describes key decisions about SGO's prosecution as having been "made" or "approved," but by whom, the government does not say.[4] ███████████████████████████████████

████████████████████████████████████████████

The narrow question before the Court is whether SGO's motion presents a colorable claim that the government's charging decision resulted from (a) animus toward the defendant, and/or (b) retaliation for the defendant's exercise of its constitutional rights. Nothing in the government's papers dispels the serious concerns raised by SGO, which are supported by public statements by the President and his inner circle denouncing Smartmatic and calling for the prosecution of those they believe "rigged" the 2020 presidential election. Nor does the Opposition address the unprecedented politicization of the DOJ since January 2025, which has resulted in vindictive abuses of the justice system and undermines the DOJ's presumption of regularity.

The Superseding Indictment should be dismissed with prejudice. At a minimum, the record is more than sufficient to warrant discovery and an evidentiary hearing aimed at ensuring the protection of SGO's constitutional rights to due process and equal protection of the law.

## ARGUMENT

### I.   The Government Has Vindictively Prosecuted SGO.

#### A.   The circumstances of the indictment warrant a presumption of vindictiveness.

The facts and circumstances underlying SGO's indictment give rise to a presumption of vindictiveness. *See* Mot. at 11–14. The government argues that no presumption of vindictiveness

---

[4] In addition to being irrelevant, the government's pre-indictment timeline omits key details pertinent to SGO's claim of vindictiveness, including that the DOJ used the criminal investigation as an avenue to question Smartmatic personnel about election rigging theories in the fall of 2020— just as the President proclaimed that "The only way we're going to lose this election is if the election is rigged. Remember that." THE LONDON STANDARD, *"Donald Trump: The Only Way We're Going To Lose This Election, Is If The Election Is Rigged,"* YOUTUBE (Aug. 18, 2020), https://www.youtube.com/watch?v=IFzi5TmAjRE.

can arise in the pretrial context, citing *United States v. Barner*, 441 F.3d 1310 (11th Cir. 2006) and *United States v. South*, 295 F. App'x 959 (11th Cir. 2008). *See* Opp. at 7 & n.2. That proposition is wrong and relies on a misreading of the cases the government cites, each of which reflects the much narrower rule that when the government increases charges faced by a defendant after the defendant resists post-trial plea negotiations (*e.g.*, after an appeal), a presumption of vindictiveness arises *automatically*. *Barner*, 441 F.3d at 1316; *South*, 295 F. App'x at 967, 968 n.4. No case forecloses the possibility that "in a particular factual setting, including a pre-trial situation, . . . a presumption of vindictiveness" may be proper. *Barner*, 441 F.3d at 1317.

In fact, every case that the government cites in its Opposition acknowledges the possibility that a pretrial presumption of vindictiveness may arise when a change in charging decision is coupled with additional factors that justify the presumption. *See, e.g.*, *Barner*, 441 F.3d at 1317 (refusing to "rule[] out the possibility that a case could present additional factors that would make it appropriate to use the presumption in a pre-trial setting"); *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (prosecutor retains discretion "so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'"); *South*, 295 F. App'x at 967 n.4 ("Although the Supreme Court did not rule out the possibility that a case could present ***additional factors*** that would make it appropriate to use the presumption in a pre-trial setting, the facts in ***this case*** do not warrant any such presumption" (emphases added)).

The circumstances surrounding SGO's indictment are precisely the "additional factors" that make a pre-trial presumption of vindictiveness appropriate. As discussed in SGO's Motion, the yearslong pattern of public statements by the President and his allies impugning Smartmatic's integrity and calling for the prosecution of voting machine companies following the 2020 presidential election; the contrast between the Administration's approach to SGO and its approach to corporate foreign bribery enforcement in general; and the nationwide wave of politically motivated prosecutions occurring alongside the SGO indictment all constitute compelling "circumstantial evidence that the government acted vindictively" in seeking and obtaining a Superseding Indictment adding SGO as a defendant. *Barner*, 441 F.3d at 1322.

3

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**B.    SGO has presented direct evidence of vindictiveness.**

Even without applying a presumption of vindictiveness, SGO has supplied more than enough direct evidence of vindictiveness to warrant dismissal.  For example: the President's political allies falsely claiming in 2020 that Smartmatic had "rigged" the 2020 U.S Presidential election, including a statement from then-Fox personality and now-U.S. Attorney for D.C. Jeannine Pirro opining that the DOJ should investigate Smartmatic in the wake of the 2020 presidential election, A-5; and President Trump both retweeting a tweet on December 1, 2020 that falsely accused Smartmatic of manipulating Venezuela elections and writing "Disgraceful!", A-7, and retweeting election fraud falsities about Smartmatic the following week on Twitter. A-8.  And more recently: public confirmation from the President's political ally Mike Lindell that he and the President agreed that those involved in the 2020 election should be prosecuted, A-16; and a continued stream of similar posts from the Administration and its allies implicating Smartmatic in late 2025 (A-20, A-24, A-25) and early 2026 (A-33, A-34, A-36, A-38).  ████████████████

████████████████████████████████████████████████████

████████████████

Rather than grapple with SGO's evidence of vindictiveness, the government pretends that it does not exist or that it does not matter.  *See* Opp. at 8 (claiming that "SGO's only stated basis for its claim of vindictive prosecution is the general 'circumstances and timing' of the Superseding Indictment"), *id.* n.3 (claiming, without basis, that the pattern of improperly motivated prosecutions pursued by the current Administration is "simply irrelevant to the Court's analysis").

While the government refused to confront the facts and our changing reality, the Court should not.  Put simply, SGO is the only company to be indicted for violating the FCPA since

2010. Not every company whose employees are charged with FCPA offenses is investigated or agrees to a resolution, much less gets indicted. The President and his allies have named Smartmatic as a foe of the President's since the 2020 presidential election. *E.g.*, A-7, A-29. They have called for, and celebrated, criminal investigations of Smartmatic and others they blame for the President's loss in the 2020 election. *E.g.*, A-22, A-24, A-25. The DOJ charged Smartmatic just as it was reducing its focus on FCPA enforcement. Exec. Order 14209, 90 FR 9587 (Feb. 10, 2025). And the pattern of vindictive DOJ actions against the President's political adversaries in recent months further supports the conclusion that the DOJ acted vindictively here. *E.g.*, A-27, A-35.

## C. The Constitution prohibits the government from prosecuting SGO in retaliation for exercising its First Amendment rights.

The government dismisses SGO's argument that it cannot be punished for exercising its constitutional right to access the courts and seek relief from the damage caused by defamatory statements made by the President's political allies. *See* Mot. at 8. It claims that SGO cited "no analogous case in support" of its theory. Opp. at 8. Not so. Courts have long recognized that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher,* 434 U.S. at 363; Mot. at 10. SGO enjoys a First Amendment right to defend itself from defamatory statements. Mot. at 14–15 (citing, *e.g.*, *Little v. City of North Miami,* 805 F.2d 962, 968 (11th Cir. 1986)). That the exercise of this right has not previously stoked a retaliatory criminal prosecution is all the more reason to question the government's insistence that the Superseding Indictment resulted from "the normal operation of the justice system." Opp. at 10.

## II. The DOJ Has Selectively Prosecuted SGO in Violation of the Equal Protection Clause.

### A. SGO has been singled out for prosecution.

The government claims that SGO failed to make the required *prima facie* showing of discriminatory effect, but in the very next sentence of its Opposition, acknowledges SGO's argument that it was "the only corporate defendant charged with an FCPA violation via indictment since approximately 2010." Opp. at 10–11. The government has no real rebuttal to this fact.

Instead, it points out that the "more than 85 corporations" that faced FCPA investigations in the last ten years "reached pre-indictment resolutions with the government," including "plea agreements, deferred prosecution agreements, non-prosecution agreements, and declinations under the Department's Corporate Enforcement Policy." *Id.* at 11. In other words, the government's explanation for why SGO was the first company indicted for FCPA violations in 15 years is that the DOJ did not choose to indict any of the other companies it investigated during that span. That truism merely *confirms* SGO's discriminatory treatment: SGO has been treated differently from every other company to be investigated on suspicion of violating the FCPA since 2010. Worse still, DOJ took the exceedingly rare step of bringing charges against SGO at the very same time that it was otherwise retreating from FCPA enforcement, and at the same time that it was closing FCPA investigations into companies like Digicel Group, Stryker Corporation, Toyota Motor Corporation, and PetroNor. *See* Mot. at 17 n.14. Against that backdrop, DOJ's already-unusual decision to indict a foreign corporation is even more suspect.

**B.     DOJ indicted SGO for a discriminatory purpose.**

In its response to SGO's argument that the government acted with discriminatory purpose, the government continues to ignore the evidence SGO offered in support of its Motion. Opp. at 12. As its point of comparison, the government cites *United States v. Wasserman*, No. 20-CR-207, 2021 WL 6550974, at *4 (M.D. Fla. Feb. 2, 2021), in which the court found that the defendant's evidence of discriminatory purpose was insufficient because it consisted of only "a letter his former attorney sent in 2008 noting that someone from the Florida Department of Financial Services said [the defendant] 'has a lot of enemies around here.'" *Id.* But the record here is worlds apart from the single second-hand affidavit relied upon in *Wasserman*. SGO relies on first-hand statements *by the President of the United States and his allies themselves* to demonstrate that the President, for example, claimed that the "2020 election was a total FRAUD" and that "A Special Prosecutor must be appointed." A-18. It points to statements by Mike Lindell, who met repeatedly with the President to discuss election conspiracies and told the press that he and the President agreed they should "melt down the machines and turn them into prison bars."

6

A-16; *see also* A-19.  It highlights public reporting of loyalty tests employed by the Administration to prevent the hiring of law enforcement officials who would not agree that the 2020 presidential election was stolen.  A-14.  And it points out that in August 2025, the President threatened to issue an Executive Order banning the use of voting machines.  A-20.

Evidence of the government's discriminatory motive has continued to mount even after SGO filed its Motion. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ Last month, two members of Congress asked DOJ's inspector general to review whether Attorney General Bondi adequately recused herself from cases involving her brother, Brad Bondi, who represents Fox in civil litigation.[5]  The same day, Chief Judge James Boasberg of the District of Columbia ruled that the DOJ was motivated by the President's personal preferences in its decision to investigate Jerome Powell, writing that a "mountain of evidence suggests that the Government served [its] subpoenas on the Board to pressure its Chair into voting for lower interest rates or resigning."[6]  Recent reporting also confirms that the President's allies inside and outside the government, including at the DOJ and FBI, are "hunting for an array of evidence to support Trump's claim that he defeated Joe Biden—and to bolster the case for new election laws as the president urges Congress to pass the SAVE America Act."[7]  Meanwhile, DOJ's internal oversight office is withering on the vine.[8]  And just this month, the President announced

---

[5] David Thomas, *Democratic Lawmakers Seek Review of DOJ Cases Involving Pam Bondi's Brother*, REUTERS (Mar. 11, 2026).

[6] Michael Kunzelman and Christopher Rugaber, *Prosecutor Conceded Lack of Criminal Evidence in Federal Reserve Investigation, Transcript Shows*, ASSOCIATED PRESS (Mar. 24, 2025), https://apnews.com/article/federal-reserve-powell-subpoenas-trump-pirro-ab3dfc8278c8ae793e883f6bb9beff98.

[7] Bergengruen et. al., *The Unlikely Ensemble Leading Trump's Hunt for 2020 Election Fraud*, WALL STREET JOURNAL (Mar. 30, 2026), https://www.wsj.com/politics/the-unlikely-ensemble-leading-trumps-hunt-for-2020-election-fraud-6f69ae66?st=cuxant&reflink=desktopwebshare_permalink.

[8] *See* Ben Penn, *DOJ Watchdog Accused of Ignoring Trump Leaders' Misconduct*, BLOOMBERG LAW (Mar. 30, 2026), https://www.bloomberglaw.com/product/blaw/bloomberglawnews/white-collar-and-criminal-law/BNA%200000019d-3edd-d8d9-afbd- befd01420001?emailQueueID=7e c40489-5da1-f838-a77b-08086634f93d&senderID=26763095&utm.

7

the firing of Attorney General Bondi—reportedly, at least in part, because the President was "angry about the Justice Department's failure to win cases involving his political opponents."[9]  Taking over for Bondi is now-Acting Attorney General Todd Blanche, who told reporters on April 7 that President Trump has a "right, and indeed, [a] duty" to push for investigations of individuals "that the president in the past has had issues with and believes should be investigated."[10]

Finally, in defense of its prosecutorial motives, the government emphasizes that the decision to charge SGO was made by "career prosecutors," *see, e.g.*, Opp. at 1, 13, but then concedes that the charging decision was made by the "Department" and "Department leadership" (who take their orders from the President), in *consultation* with career prosecutors, *id.* at 5.[11]  SGO bears no animus against the line prosecutors in this case, who are in the unenviable position of working for a DOJ leadership that has abandoned the Department's principles of apolitical and equal application of the law.[12]  Many AUSAs around the country have been fired or resigned because of the President and DOJ's contempt for these principles.  The decision to charge SGO, however, was bigger than them.  It is *that* decision, and not the line prosecutors' individual impressions of the case, that ultimately matters here.[13]  And it is *that* decision by the Department—

---

[9] Glenn Thrush and Tyler Pager, *Pam Bondi Wanted a Graceful Exit.  But Trump Wanted Her Gone.*, NEW YORK TIMES (Apr. 2, 2026), https://www.nytimes.com/2026/04/02/us/politics/pam-bondi-attorney-general-trump.html.

[10] Jacob Knutson, *Acting Attorney General: Trump Has 'Right' To Order Investigations Into His Enemies*, DEMOCRACY DOCKET (April 7, 2026), https://www.democracydocket.com/news-alerts/acting-attorney-general-todd-blanche-trump-duty-right-order-investigations.

[11] That "Department leadership" included former Acting Assistant Attorney General Matthew Galeotti, who recently left DOJ and joined Kirkland & Ellis—the same firm that represents Fox in Smartmatic's defamation suit. *See* Jack Rodgers, *Kirkland Adds Ex-DOJ Criminal Division Leader in New York*, LAW360 (Mar. 9, 2026), https://www.law360.com/pulse/articles/2450572/kirkland-adds-ex-doj-criminal-division-leader-in-new-york.

[12] ███████████████████████████████████████████████████████████████████

[13] *See* Mot. at p. 19 (citing *United States v. Abrego-Garcia*, 802 F. Supp. 3d 1055, 1063 (M.D. Tenn. 2025) (rejecting government's argument that "motives of the Executive Official Defendants

the decision to take the exceedingly rare step of seeking a grand jury indictment of a company for FCPA violations—that distinguishes SGO's treatment from the treatment of the 85 other companies the DOJ has investigated for FCPA violations in the last decade. That decision appears to have been motivated by the President and his DOJ's open animus toward Smartmatic.

More fundamentally, where, as here, a defendant makes a *prima facie* showing of a "realistic likelihood" of vindictiveness, the Court cannot just take the government at its word—instead, it should "conduct an evidentiary hearing where the government's explanations can be formally presented and tested." *See United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (reversing denial of motion to dismiss for vindictive prosecution and ordering discovery); *see also United States v. Abrego-Garcia*, 3:25-cr-00115 (M.D. Tenn. 2025), Dkt. 138, at 11 (citing same).

### III.    At a Minimum, SGO Is Entitled to Discovery and a Hearing.

A defendant seeking dismissal for selective or vindictive prosecution only needs to make a "colorable claim" to be entitled to discovery, and to present facts creating a "reasonable doubt" as to the constitutionality of the prosecution to be entitled to an evidentiary hearing. *United States v. Carey*, __ F. Supp. 3d __, No. 25-251 (JEB), 2026 WL 141919, at *10 (D.D.C. 2026); *Abrego-Garcia*, 802 F. Supp. 3d at 1058 (defendant entitled to discovery when there is "some evidence of vindictiveness"); *Jordan*, 635 F.3d at 1188 ("defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution.") (citation modified); Mot. at 18–19.

The Opposition devotes little attention to SGO's right to discovery—aside from reciting a legal standard, its argument is limited to one sentence on the brief's final page. Opp. at 13. Even there, the government analogizes SGO's request to *United States v. Armstrong*, 517 U.S. 456 (1996). The comparison is unconvincing. In *Armstrong*, the Supreme Court held that a defendant failed to show sufficient evidence of selectiveness to warrant discovery when he based his claim on (1) a "study" that failed to identify the treatment of similarly situated individuals; (2) a newspaper article about discriminatory effects *at sentencing*, rather than charging decisions; and

---

[are] irrelevant because they are not the day-to-day prosecutors in this case" because discovery may show that DHS "induced the DOJ to indict Abrego.").

9

(3) affidavits that "recounted hearsay and reported personal conclusions based on anecdotal evidence." *Id.* at 470–71. By contrast, the nature and volume of evidence offered by SGO is robust and suffers from none of the defects identified by the *Armstrong* court. *See supra* at 4–5.

A far better comparator is *Abrego-Garcia*, where the defendant moved to dismiss an indictment for vindictive and selective prosecution and requested discovery and an evidentiary hearing. 3:25-cr-00115, Dkt. 138 at 1. Abrego's pre-discovery evidence of vindictiveness included "numerous public statements" by Executive Branch officials calling Abrego "a 'gang member,' a 'violent criminal' and a 'terrorist,'" and "celebrat[ing] the criminal charges against him." *Id.* at 4–6. These statements, coupled with the government's decision to seek an indictment years after the investigation of Abrego's alleged offense seemingly resolved, *id.* at 3, 5, showed a "realistic likelihood of vindictiveness [that] entitle[d Abrego] to discovery and a hearing," *id.* at 7, 9. Like in *Abrego-Garcia*, SGO's indictment followed a litany of statements by the President's allies suggesting that SGO is a criminal enterprise (A-4, A-6) and encouraging and then celebrating the investigation and indictment of SGO (A-19, A-22, A-25). The timing of this indictment— amid Smartmatic's civil litigation against the President's allies, more than a year after the DOJ chose to exclude SGO from its initial indictment, and after the DOJ otherwise backed away from FCPA enforcement—only confirms the importance of the discovery SGO seeks.

## CONCLUSION

The government's Opposition suffers from a fatal defect: it does not acknowledge where we, as a country and as a criminal justice system, currently are. This DOJ, whatever the motivations of the line prosecutors, is not the DOJ of years ago. This DOJ is not motivated solely by an apolitical commitment to the pursuit of justice; instead, it has subordinated the usual focus on law and fact to the President's political whims.

For these reasons, and for those set forth in SGO's Motion to Dismiss, the Court should dismiss the Superseding Indictment with prejudice, or in the alternative, permit discovery and an evidentiary hearing on the issues presented.

10

Date:   April 14, 2026

**Sweetnam Schuster & Schwartz, LLC**

**/s/ Joseph M. Schuster**
Joseph M. Schuster, Esq.
101 N.W. 8th Street
Suite 200, Unit 12
Miami, FL 33136
Tel: 305-610-8330
Email: jschuster@sweetnamlaw.com
FL Bar No.: 0115812

*Counsel for SGO Corporation Limited*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 14, 2026, I presented the foregoing to the Clerk of the

Court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to

the corresponding parties.

By:___*s/ Joseph M. Schuster*___
Joseph M. Schuster, Esq.